# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR123 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTOPHER FITZGERALD, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Defendant Fitzgerald seeks to suppress all evidence seized from his residence at 26900 George Zeiger Drive, Apt. 327, Beachwood, Ohio 44122, owing to what he perceives as insufficiencies in the warrant and affidavit offered in support of the warrant that led to an unjustified probable cause determination. (Doc. No. 43 (Motion ["Mot."]).) Specifically, he argues that there was insufficient evidence to support a finding that he directly or indirectly participated in any drug transactions, and that the affiant erroneously relied on hearsay information from a confidential informant. Fitzgerald also complains that the affidavit impermissibly relies on stale evidence. The government rejects each attack upon the warrant and supporting affidavit. (Doc. No. 44 (Government Opposition Brief ["Opp'n"]).) In the event that the Court finds probable cause lacking, the government also argues that the searches should be upheld under the good faith exception to the exclusionary rule. (*Id*. at 231-33.)

*Evidentiary Hearing*

"A district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear on the legality of a search." *United States v. Montgomery*,

395 F. App'x 177, 186 (6th Cir. 2010) (citations and quotation marks omitted). While Fitzgerald's motion requested an oral hearing, defense counsel agreed, in a telephonic status conference with the Court on October 24, 2016, that the pending motion could be decided on the briefs without the need for an evidentiary hearing. (Minutes from 10/24/2016). Given that the suppression motion turns on the sufficiency of the warrant and the supporting affidavit, the Court agreed that an evidentiary hearing was unnecessary. Defense counsel further confirmed that defendant Fitzgerald was not requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). (*Id.*) Accordingly, the Court took the matter under advisement and now issues its ruling on the suppression motion.

*Background*

On April 3, 2015, FBI Task Force Officer ("TFO") John Guzik applied for a search warrant for defendant's residence, alleging that there was probable cause to believe that evidence of drug trafficking and money laundering would be found at the premises. The application was supported by an affidavit, prepared by Guzik and totaling 62 pages. (Doc. No. 43-1 (Affidavit of John Guzik ["Aff."]).) The supporting affidavit contained information derived from wiretaps of defendant's phone and others, video surveillance, field investigation, GPS tracking data, and a confidential informant. TFO Guzik also drew from his considerable experience investigating "organizations involved in drug trafficking offenses in the Northern District of Ohio and elsewhere." (Aff. ¶ 2.)

In 2014, the Task Force began investigating a drug trafficking organization ("DTO") run by Walter Walker III. (*Id.* ¶ 14.) On April 7, 2014, the Task Force responded to a 911 call at 547 Emerald Court, Aurora, Ohio regarding a man threatening suicide. (*Id.* ¶ 19.) The man, Kevin Bonds, was the cousin of Walker and, in a suicide letter recovered at the scene, Bonds blamed

2

Walker for his "mess." (*Id*.) Bonds was ultimately subdued by officers after he sustained a non-fatal self-inflicted gunshot. (*Id*.) While on-site, officers observed luggage that had been cut open. Officers secured a search warrant, and subsequent searches of the Aurora residence uncovered more altered luggage, plastic wrap, a vacuum sealer, multiple cell phones, and empty kilogram wrappers with a white residue that test positive for cocaine. The affiant averred that altered luggage was often used to transport drugs and/or drug money and that the other items were also commonly used by DTOs. (*Id*. ¶¶ 19-23.) Officers subsequently learned that the Aurora residence was subleased by Fitzgerald when Fitzgerald, himself, contacted the Aurora Police Department. (*Id*. ¶ 22.)

The affiant further averred that a confidential informant, who had received information from Chaquita Anderson, advised a member of the task force that Fitzgerald works for FedEx Corporation ("FedEx") as a delivery person. (*Id*. ¶ 24.) The confidential source further advised that Fitzgerald would get multiple kilograms of cocaine and other substances shipped to him through FedEx, and Fitzgerald would use his cousin, Anderson, to pick up the boxes of narcotics after Fitzgerald left them at a house in his delivery area. Anderson clarified that Fitzgerald operated the DTO with Walker and Jermaine Bennett. She also identified Khalilah Crumpler as the drug supplier for Fitzgerald and Walker. (*Id*. ¶ 25.) Additionally, Anderson told the confidential informant that every Tuesday Walker would meet a FedEx truck in a particular parking lot to receive a shipment of drugs. (*Id*. ¶ 35.)

The Task Force also received information from Saudeidra Nichols, who stated that Walker had been selling drugs in Cleveland and other cities for several years. She advised that Walker used hidden compartments in suitcases to transport the drug money. (*Id*. ¶¶ 26, 31.) She also stated that Walker always had 5 cellular phones with him, and that he would change phones

3

every two to three weeks. (*Id*. ¶ 33.)

During the course of the investigation, the Task Force also intercepted numerous telephone calls between Fitzgerald, Walker, and other identified members of the DTO. During these conversations, the participants used coded language, and discussed the use of secret compartments for transporting items. (*See, e.g*., *id*. ¶¶ 60, 68-69, 77, 107.) The participants also discussed monetary transactions. (*See, e.g., id*. ¶¶ 71, 99.) The affiant averred that this activity was all consistent with drug trafficking.

These same phone calls, along with GPS tracking and surveillance, captured what the affiant believed were several drug transactions. In one such transaction, surveillance and tracking confirmed that Fitzgerald's FedEx delivery truck was seen in the area at the time of the suspected drug drop, and further confirmed that Fitzgerald was not making a legitimate delivery on behalf of FedEx. (*Id.* ¶ 86.) On another occasion, surveillance observed Fitzgerald returning to 26900 George Zeiger Drive after a suspected drug drop. (*Id*. ¶ 66.) Also during these phone calls, the Task Force learned that Fitzgerald's new address was 26900 George Zeiger Drive. (*Id*. ¶¶ 72, 109[1].)

*Probable Cause*

The Fourth Amendment mandates that there must be probable cause for any search and seizure. U.S. Const. amend. IV. "Probable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Pardo*, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting *United States v. Bennett*, 905 F.2d 931, 934

---

[1] The affidavit contains two paragraphs that are numbered "109." The Court references the second paragraph.

(6th Cir. 1990)). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Fraizer*, 423 F.3d 526, 531 (6th Cir. 2005) (quotation marks and citation omitted). "Probable cause is based on the totality of the circumstances; it is a 'practical, non-technical conception that deals with the factual and practical considerations of everyday life.'" *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *Fraizer*, 423 F.3d at 531); *see United States v. Lazar*, 604 F.3d 230, 241-42 (6th Cir. 2010) (trial judge properly found probable cause in common-sense manner where affidavit was based on two-year involvement in case, personal visits to locations, review of bills, and extensive interviews). However, the Court's review of the sufficiency of the affidavit is limited to the information presented in the four-corners of the affidavit. *See Whiteley v. Warden*, 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

<u>Confidential Informant</u>

Fitzgerald first challenges the affiant's reliance on hearsay information from a confidential source. Where an affidavit relies heavily upon information from a confidential source, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (citing *Fraizer*, 423 F.3d at 532). "As long as the issuing judge can conclude independently that the information is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005); *see United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) ("an affidavit that

5

supplies little information concerning an informant's reliability may [still] support a finding of probable cause, under the totality of the circumstances, if it includes corroborating information") (citations omitted).

Here, the affidavit provides that the confidential informant had been providing information to the task force for 11 months, he had no criminal convictions, and his information has never been found to be false or misleading. (Aff. ¶ 13.) This, alone, is sufficient to support the magistrate's reliance on the information supplied by the confidential informant. *See United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) (explaining that "information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause") (collecting cases); *Green*, 250 F.3d at 480 ("Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.") (citations omitted).

Yet, the information provided by the confidential informant that defendant was part of the DTO was also corroborated by other evidence in the affidavit, including wiretaps of Fitzgerald's own phone calls wherein he speaks in code and discusses the exchange of money and the use of secret compartments. There was also surveillance placing Fitzgerald and his FedEx truck at the scene of suspected drug transactions when no legitimate FedEx deliveries were scheduled.

Nonetheless, Fitzgerald complains that the information supplied by the confidential informant is especially suspect because the informant did not rely on first hand observations but he, himself, was relaying hearsay from another individual. "Hearsay reported by informants is not automatically a bar to a finding of probable cause." *United States v. Campos-Gonzales*, 996 F.2d 1217, at *4 (6th Cir. May 27, 1993) (table) (collecting cases, including *United States v. Jenkins*, 525 F.2d 819, 823 (6th Cir. 1975)). "It is not unusual for an affidavit of a law

enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant." *United States v. Smith*, 462 F.2d 456, 459 (8th Cir. 1972) (citation omitted).

"Where an informant's report is not based on personal knowledge, but rather on the information of a second individual, the magistrate is 'called on to evaluate such information as well as all other information in the affidavit in order to determine whether the informant gave his information in a reliable way and from reliable sources." *Campos-Gonzales*, 996 F.2d 1217, at *4 (quoting *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir.). In such circumstances, a reviewing court should determine whether a substantial basis exists for crediting the second individual's information. *Id.* (citing *United States v. Satterwhite*, 980 F.2d 317, 322 (5th Cir. 1992)).

As discussed above, the information conveyed to the confidential informant through Anderson regarding Fitzgerald's alleged drug trafficking was corroborated by surveillance, wiretaps, and GPS tracking data. Additionally, the affidavit established that Anderson was personally familiar with Fitzgerald, as the two are cousins. Given the totality of the circumstances, there is no reason to reject as insufficient the hearsay and double hearsay offered by the confidential informant.

<u>Nexus</u>

Fitzgerald next challenges the sufficiency of the affidavit supporting the warrant because it allegedly failed to establish the necessary nexus between the place searched and the items to be seized. "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.

2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)); *see Fraizer*, 423 F.3d at 531 ("To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search.") (internal quotation marks and citation omitted).

TFO Guzik explained in his affidavit that, generally, his experience and training in investigating drug trafficking activity has taught him that the search of the residences of known drug dealers will yield evidence of drug trafficking. (Aff. ¶ 6.) According to Guzik, this information can include: large amounts of currency, as well as other items of value; addresses, telephone numbers or other contact information for their drug associates; books, receipts, ledgers, and similar records; and other items linking them to drug activity like pagers, computers, cellular phones. (*Id*.) In fact, the affidavit noted that "[e]ven if off-site locations are used to store records, some evidence such as safety deposit boxes, deposit keys, records, and receipts and/or documents regarding mini-warehouses, mail and answering services, etc. will be present." (*Id*.)

As set forth above, the affidavit contained evidence that Fitzgerald was involved in a DTO with Walker, and that the two had participated in drug transactions. TFO Guzik's experience that evidence of drug activity can often be found at the drug dealer's residence, alone, is sufficient to establish a nexus to search the residence. *United States v. Goward*, 188 F. App'x 355, 358-59 (6th Cir. 2006) (Evidence of drug deals away from the residence, coupled with affiant's experience that drug dealers keep evidence of dealing at their residence, was sufficient to establish nexus to search residence—even without evidence of drug activity at the residence); *see United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2006) (same). *Accord United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir.) (holding that although defendant, a known drug dealer, was arrested with drugs at another location, there was sufficient nexus to establish probable

8

cause for a search warrant of his residence (collecting cases), *cert. denied*, 537 U.S. 1130, 123 S. Ct. 909, 154 L. Ed. 2d 817 (2002); *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) (reasonable to infer that evidence of drug trafficking would be found at residence of drug dealer) (citation omitted).

The affidavit offered further support for the affiant's belief that evidence of drug trafficking would be found at the Beachwood address. Fitzgerald had been seen heading to the address after a suspected drug transaction (*id.* ¶ 66), and he was heard in an intercepted call advising that he had left one of his cell phones at the address. (*Id.* ¶ 87.) Additionally, the searches of the Aurora address—Fitzgerald's former address—yielded evidence of drug trafficking.[2]

There was more than sufficient information in the affidavit to allow a neutral magistrate to conclude that there was a "fair probability" that evidence involving illegal drug activity would be found at Fitzgerald's residence. Accordingly, and based upon the "totality of the circumstances," the Court finds that the affidavit supplied the necessary nexus between the Beachwood, Ohio residence and the evidence sought.

Stale Evidence

Fitzgerald also complains that the search warrant was based on stale evidence. The probable cause requirement for a search warrant "is concerned with facts relating to a presently existing condition." *Abboud*, 438 F.3d at 572 (quotation marks and citation omitted). "Thus the critical question is whether the information contained in the affidavit, when presented to the . . .

---

[2] The affidavit also set forth facts that demonstrated a "fair probability" that evidence of money laundering would be found at defendant Fitzgerald's residence. (Aff. at ¶¶ 2-6, 71, 99.)

judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Id*. (quotation marks and citation omitted) The length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling. *Id*. In fact, "It is possible that even if a substantial amount of time has elapsed between a defendant's last reported criminal activity and the issuance of the warrant, the warrant had not been stale." *Id*. (quotation marks and citation omitted).

In considering the issue of staleness, the Sixth Circuit has outlined several factors to consider: the character of the crime, the criminal (nomadic or entrenched), the thing to be seized, and the place to be searched. *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) (quotation marks and citation omitted); *see United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (citations omitted).

Fitzgerald fails to identify any evidence that he believes was stale. (*See* Mot. at 152, wherein defendant states simply "[i]t is our contention that much of the information utilized to establish probable cause was 'stale.'") Nonetheless, the Court turns to the aforementioned factors that guide the staleness inquiry.

Because "drugs are usually sold and consumed in a prompt fashion," information regarding the presence of drugs at a particular location "goes stale very quickly[.]" *Brooks*, 594 F.3d at 493 (quotation marks and citation omitted). Nonetheless, a search may be based on older information in situations where officers are searching for other indicia of drug trafficking that are more "enduring" than drugs. Moreover, when the evidence sought concerns a long-term criminal operation, greater lapses of time between the information relied upon and the request for a search warrant are permitted. *United States v. Thomas*, 605 F.3d 300, 309-10 (6th Cir. 2010) (eight month old tip from confidential informant as to marijuana growing operation on premises not

stale); *see also United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("[e]vidence of on-going criminal activity will generally defeat a claim of staleness") (citation omitted). The Sixth Circuit has found the distribution of illegal drugs to be a long-term criminal operation. *See, e.g., United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). Additionally, courts have noted that the indicia of criminal activity may remain for some period of time after the defendant's last reported criminal activity. *United States v. Canan*, 48 F.3d 954, 959 (6th Cir. 1995) (citations omitted).

As discussed above, the facts set forth in the affidavit establish probable cause to believe that Fitzgerald was involved with Walker and others in an on-going drug conspiracy. For example, the affidavit provided that, on March 4, 2015, Fitzgerald was engaging in coded discussions with Walker and Fitzgerald's business partner, Crumpler, about transporting shipments of cocaine. (*See, e.g.,* Aff. ¶¶ 77, 78.) The affidavit also detailed a cellular call three days later (on March 7, 2015), between Fitzgerald and Walker, regarding the plan for Fitzgerald to use his FedEx truck to transport a shipment of cocaine. (*Id*. ¶ 85.) According to the affidavit, GPS tracking placed Fitzgerald's delivery truck in the area of the known drug transaction, and records confirmed that Fitzgerald was not scheduled to deliver a package for FedEx at the time. (*Id*. ¶ 86.) In fact, the affidavit provided that, as late as March 31, 2015, Fitzgerald was having coded conversations about Walker being out of town arranging for a shipment of drugs. (*Id*. ¶ 107.) This last conversation took place a mere four days before the search of his residence. This ongoing criminal conduct cures any possible staleness. The Court, therefore, rejects Fitzgerald's staleness attack upon the supporting affidavit.

On the whole, the affidavit provided a sufficient basis for the neutral magistrate to conclude that there was probable cause to believe that evidence of drug trafficking was likely to

be found at the Beachwood, Ohio address. For this reason alone, Fitzgerald's motion to suppress must be denied.

<u>Good Faith</u>

Even if the affidavit and warrant was fatally defective, the search would still be upheld under the good faith exception articulated in *Leon*. Under this exception, the exclusionary rule will not apply to bar the admission of evidence seized in violation of the Fourth Amendment where the officers had a "good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996) (citation omitted). The "good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances […] may be considered." *Leon*, 468 U.S. at 922-23 n.23.

The good-faith defense will not apply, however, where: (1) the supporting affidavit contains information the affiant knew or should have known is false; (2) the issuing magistrate lacked neutrality and detachment; (3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or (4) the warrant is facially deficient. *Leon*, 468 U.S. at 923; *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (citation omitted).

None of the exceptions to the good faith rule in *Leon* apply. Fitzgerald has not alleged that the affiant knowingly relied on false information or that he acted in bad faith, there is no evidence that the issuing magistrate judge was not neutral, the affidavit was not "bare bones," and the affidavit is not facially deficient.

Moreover, given the obvious effort exhibited by the applying agent to comply with the

requirements of Fourth Amendment, (including the level of detail and the care given to tie Fitzgerald to the property to be searched and the drug activity under investigation), coupled with the fact that the application was granted by a detached and neutral magistrate, the Court cannot find that a reasonably well trained officer would have known that such a search was illegal, if, in fact, it was illegal. *See, e.g., United States v. Stelton*, 867 F.2d 446, 451 (8th Cir. 1989) (good faith exception applied where agents "took much care in drafting the descriptions of the items to be seized"); *United Sates v. Buck*, 813 F.2d 588, 593 (2d Cir. 1987) (good faith exception applied where officers provided details outlining the crimes and the evidence sought to a neutral magistrate).

*Conclusion*

Because the warrant and the supporting affidavit satisfy the Fourth Amendment requirements, and the warrant was executed in good faith, defendant Fitzgerald's motion to suppress (Doc. No. 43) is DENIED.

**IT IS SO ORDERED**.

Dated: November 29, 2016

                                                     
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**