# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR123 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTOPHER FITZGERALD, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Christopher Fitzgerald ("defendant" or "Fitzgerald") for a new trial. (Doc. No. 112 ["Mot."].) The United States opposes the motion. (Doc. No. 122 ["Opp'n"].) For the reasons to follow, defendant's motion for a new trial is denied.

## I. BACKGROUND

On April 20, 2016, the United States returned an indictment against defendant and two other individuals, charging the trio with participation in a drug trafficking organization. With respect to Fitzgerald, it was the United States' theory that he used his position as a truck driver for FedEx to facilitate drug transactions. The indictment charged Fitzgerald with conspiracy to possess with intent to distribute and to distribute cocaine; distribution of cocaine; and multiple counts of use of a communications facility to facilitate a drug trafficking offense. The United States also sought forfeiture of certain property owned by Fitzgerald. (Doc. No. 1 (Indictment).)

All three defendants proceeded to trial. Among the United States' witnesses was Walter Walker, who testified as to his drug-related dealings with defendants. The United States also

presented several members of law enforcement; most testified exclusively as fact witnesses, testifying to their roles in the investigation that led to the arrest of Fitzgerald and his co-defendants, while Task Force Officer James Cudo offered expert testimony on drug trafficking. Fitzgerald was the only defendant to take the stand. On March 7, 2017, after an eight day jury trial, the jury returned guilty verdicts against all defendants on all counts charged in the indictment. (Doc. No. 80 (Jury Verdicts).) The jury also returned a special verdict of forfeiture against Fitzgerald. (Doc. No. 81 (Special Verdict).)

## II. STANDARD OF REVIEW

Rule 33 of the Federal Rules of Criminal Procedure provides that "'[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting Fed. R. Crim. P. 33(a)). "The rules does not define 'interest of justice' and the courts have had little success in trying to generalize its meaning." *Id*. (internal quotation marks and citation omitted). It is, however, "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Id*. (citation omitted). Any legal error that is significant enough to require reversal on appeal is an adequate ground for granting a new trial. *See id.* (quoting with approval *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)); *see United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) (new trial may be warranted when "the substantial rights of the defendant have been jeopardized by errors or omissions during trial"). However, any error that is considered harmless under Fed. R. Crim. P. 52 will not warrant a new trial. *See* 3 Charles Alan Wright & Sarah N. Whelling, *Federal Practice and Procedure* § 581 (4th ed. 2011) (citing, among authority, *United States v.*

2

*Wilkerson*, 251 F.3d 273, 280 (1st Cir. 2001)).

"[T]he defendant bears the burden of proof that a new trial is warranted and 'such motions should be granted sparingly and with caution.'" *United States v. Dolan*, 134 F.3d 372, at *3 (6th Cir. 1997) (quoting *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993)). The decision of whether a new trial should be granted rests within the district court's sound discretion. *United States v. Wheaton*, 426 F. Supp. 2d 666, 669 (N.D. Ohio 2006) (citing *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967)); *see United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991) (citation omitted).

### III. DISCUSSION

In his post-trial motion, Fitzgerald argues that five purported trial errors necessitate that he receive a new trial: (1) that the United States improperly elicited testimony from a police detective regarding his belief that a drug transaction between Fitzgerald and Walker had taken place; (2) that the Court improperly limited the direct examination of Fitzgerald into allegations that Walker had threatened to kill him; (3) that the Court limited defense counsel's cross-examination of Walker; (4) that the Court erred when it allowed the United States to introduce hearsay testimony regarding defendant's presence at an apartment that was searched in connection with the investigation; and (5) that the United States used "other acts evidence" to convict defendant. (Mot. at 2471-72.) The Court will address each argument in turn.[1]

#### 1. The United States did not Elicit Improper Opinion Evidence

Defendant argues that United States' witness John Guzik, a detective with the City of Lakewood, Ohio, was permitted to offer his opinion that Fitzgerald met with Walker for the

---
[1] The Court addresses the arguments in the order they appear in the motion rather than the memorandum.

3

purpose of conducting a drug transaction in violation of Rules 702 and 704(b) of the Federal Rules of Evidence.[2] While he concedes that law enforcement officials may "offer an expert opinion to assist jurors in making determinations to better understand complex criminal activities or criminal behavior[,]" Fitzgerald maintains that the Court erred in permitting the witness to assert "his belief or opinion that [Fitzgerald] had engaged in a drug transaction with [Walker] in violation of Rule 704(b)[.]" (Mot. at 2473, case citation omitted.) There are several problems with defendant's argument.

First, Officer Guzik was not called as an expert witness on drug trafficking. Rather, he was called as a fact witness to testify as to the role he played in, and the actions he took during, the investigation of defendant and his co-conspirators. Officer Guzik testified that, in addition to preparing the Title III wiretap affidavits, he monitored the intercepted cellular phone calls. In particular, he testified that his team intercepted a phone call between Walker and Fitzgerald, during which he believed that the two men had arranged for a "meet" to take place on January 31, 2015. (Doc. No. 101 at 1384-85.) He explained that, despite deploying his team on that date, no meeting between the two men was observed because "obviously it happened prior to us being deployed." (*Id*. at 1386.) Upon objection by defendant's counsel, the Court struck the portion of the answer containing the officer's assumption that the meeting had already taken place. (*Id*.) Thereafter, the witness answered questions relating to the facts that led him to conclude that the meeting had taken place. A series of defense objections followed, culminating in the Court requiring that, at defense counsel's insistence, the United States be limited to inquiring as to whether the officer's investigation led him to *believe* that a meeting had taken place (as opposed

---

[2] The motion cites Rules 702 and 704(b) of the "Federal Rules of Criminal Procedure," but there are no such rules.

to stating that one did, indeed, take place). (*Id*. at 1387-97.) Defense counsel agreed that such an inquiry would resolve his objection, and the officer testified to his belief that a meeting took place and the facts from his investigation that led him to reach this belief.[3] (*Id*. at 1397 [The Court: So he needs to phrase it in terms of what he believed occurred … [w]ould that resolve your objection? Mr. Watson: "Yes, in significant part."].)

There was no error in permitting such testimony. "Testimony need not be excluded as improper lay opinion, even if some specialized knowledge on the part of the agents was required, if was based on first-hand observations in a specific investigation." *United States v. El-Mezain*, 664 F.3d 467, 513 (5th Cir. 2011) (officers could testify as to their "personal perceptions from their investigation of this case") (citations omitted); *see also United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014) ("a law enforcement officer involved in the investigation may offer lay opinions about the meaning of intercepted phone calls, but those opinions are subject to the requirements of Federal Rule of Evidence 701") (citations omitted). Here, Officer Guzik properly testified to the conclusions he reached based upon his personal observations during the course of his investigation. The Court struck the only potentially objectionable testimony—the officer's representation that the meeting "obviously" had taken place prior to his team's surveillance.

Of course, had the testimony been admitted in error (which it was not), any such error would have been harmless. Officer Guzik repeatedly testified that he did not personally observe a "meet" between Fitzgerald and Walker, so there was no concern that the jury would have

---

[3]In fact, defense counsel ultimately waived the objection at the final side bar on this issue when defense counsel rejected the United States' offer to re-ask the question whether the officer believed that the two men met and suggested that they should "[j]ust move on." (*Id.* at 1402.)

5

thought that Officer Guzik was offering any more than his "belief" that such a meeting took place. (Doc. No. 101 at 1392, 1398, 1399.) Moreover, Walker had already testified that he did meet with Fitzgerald on the day in question for the purpose of engaging in a drug transaction. (Doc. No. 99 at 1023-28.) Task Force Officer Cudo also testified regarding the meet, offering his expert opinion that a drug transaction between the two men had taken place. (*See* Doc. No. 102 at 1922-24, 1929.) Officer Cudo was properly noticed as an expert witness, and defendant did not object to him offering testimony as an expert on drug trafficking.[4] Under these circumstances, the Court finds that defendant has failed to meet his burden of demonstrating that the admission of the testimony of Officer Guzik resulted in substantial legal error for which a new trial is required.

2. **Direct Examination of Defendant was not Improperly Limited**

Without offering any record citations or argument in support, Fitzgerald complains that the Court "improperly limited the direct examination of [d]efense [c]ounsel to elicit testimony that the cooperating witness Walter Walker had threatened to kill Fitzgerald[.]" (Mot. at 2471.) The trial record does not support defendant's position. Instead, the record reveals that, on the second to last day of trial (March 6, 2017), the Court held a side bar wherein defense counsel shared that Fitzgerald had recently received threatening text messages he *believed* were sent by Walker. Counsel indicated that his client made a police report and then relocated his family to a hotel because of the threats, and that counsel "just wanted to bring that to the Court's

---

[4] As an expert witness, Officer Cudo was permitted to testify in this fashion. *See United States v. Amacher*, 919 F.2d 739, at *5 (6th Cir. 1990) (unreported) (qualified police officer may testify that evidence indicates drug distribution without running afoul of Rule 704's prohibition against offering testimony on the ultimate question of a defendant's guilt or innocence) (citing, among authority, *United States v. Dunn*, 846 F.2d 761, 762-63 (D.C. Cir. 1988)); *see also United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007) ("Courts generally have permitted police officers to testify as experts regarding drug trafficking as long as the testimony is relevant and reliable.") (citation omitted).

attention[.]"[5] (Doc. No. 103 at 1946-47.) At no time before, during, or after this side bar did Fitzgerald's counsel seek to elicit testimony from his client regarding these calls, and Fitzgerald fails to point to any relevant evidence that was improperly excluded. Accordingly, he has failed to meet his burden of demonstrating his right to a new trial on this ground.

### 3. Cross-Examination of Cooperating Witness was not Improperly Limited

Defendant also claims that the Court impermissibly limited his counsel's cross-examination of Walker regarding the tracking numbers from his burner cell phones. Specifically, defendant maintains that his counsel was not allowed to inquiry as to whether the FedEx tracking numbers appearing in test messages on Walker's phone could have been attributable to other individuals separate and apart from Fitzgerald and co-defendant Rashard Smith. (Mot. at 2471.) Once again, the record does not support defendant's argument.

On cross-examination and even recross-examination, defense counsel was permitted to probe at length into Walker's other drug associates. (Doc. No. 100 at 1098, 1115-22, 1152-53.) He was also permitted to establish through Walker that the witness used burner phones with individuals other than defendants. (*Id*. at 1163-65.) On redirect, the United States elicited testimony that was limited to Walker's cellular interaction with a man identified as "Cabbie," whom Walker maintained was co-defendant Smith. (*See id*. at 1236-44.) On recross, Fitzgerald's counsel attempted to elicit testimony that went beyond the interaction with "Cabbie." While the Court permitted substantial inquiry into several matters, the Court eventually directed counsel to approach and advised counsel that his recross-examination had gone well beyond the scope of

---

[5]Defense counsel was unable to identify any evidence linking Walker to the text messages. While the texts purportedly referenced the clothing defendant was wearing at trial, there was nothing to suggest that Walker—as opposed to anyone else who observed the trial—sent the messages. The United States' counsel also represented that the United States had no evidence that the alleged threats originated with Walker. (*See id*. at 1947.)

redirect. (*Id.* at 1283.) After a discussion with counsel, the Court ruled that defense counsel's recross needed to be limited to matters raised on redirect relating to "Cabbie." (*Id.* at 1290.) It is well settled that a trial court may limit reexamination of a witness on this basis. *See United States v. Payne*, 437 F.3d 540, 540 (6th Cir. 2006) ("We have permitted district courts to curtail or even deny recross-examination if the government elicits no new matters on redirect examination.") (citations omitted). Accordingly, there was no error, substantial or otherwise, in limiting defense counsel's recross-examination and defendant is not entitled to a new trial on this basis.

    **4.    Improper Hearsay Testimony was not Admitted**

Detective Michael Wadlington, a law enforcement officer with the Aurora Police Department and a member of a county drug task force, testified on direct examination that on April 8, 2014 he and his team visited an apartment on Emerald Court in Portage County to search for evidence of drug trafficking. Other officers had responded to the apartment the day before to investigate an attempted suicide when they noticed evidence that suggested that the residence was being used for criminal activity. (Doc. No. 99 at 872-73.) Upon viewing certain items commonly associated with drug trafficking—hallowed out suitcases, vacuum sealers, plastic wrappers with white residue, and boxes wrapped in electrical tape—the witness returned to the station to obtain narcotics-specific search warrants. (*Id.* at 873-78.) When the detective returned to the apartment with the warrants, certain items, including the wrappers that contained white residue, were missing. (*Id.* at 883-84.)

In an effort to establish that defendant and others had entered the premises between the witness's two visits, the United States asked the witness about phone conversations he had while at the station typing up the warrants. The detective testified that he first received a call from

8

Fitzgerald, who advised that he was at the apartment and saw a note that said he should contact the police. (*Id*. at 879.) The witness then contacted Officer Christopher Reiter, one of the officers who had been present at the apartment, to inquire why Fitzgerald could be at the apartment and not see the officers still there. (*Id*.) Officer Reiter informed him that he found defendant and others inside the residence. (*Id*. at 880, 884.)

Defense counsel objected to testimony regarding the witness's phone conversation with Officer Reiter, but the United States' attorney represented that it was not offered for the truth of the matter but was only offered as background to explain how the items came up missing and the events that led to the discovery. (*Id*. 880.) In his post-trial motion, Fitzgerald argues that the testimony regarding the call was used to improperly bolster the prior testimony of Officer Reiter and should have been excluded as hearsay.

Even if the testimony had been improperly admitted, defendant fails to explain how such a response would have bolstered Officer Reiter's prior testimony. He also fails to explain how the testimony prejudiced him. Officer Reiter had previously testified, without objection, that he found defendant and others at the apartment (*Id*. at 855)—a fact that was confirmed by defendant's own call to Detective Wadlington. (*Id*. at 879). Defendant did not object to the testimony of Reiter or Wadlington as to these matters at trial, and he cannot claim now that the admission of the background evidence of the officer's conversation constituted substantial legal error.

### 5. The United States did not Present Improper "Other Acts" Evidence

Finally, defendant argues that the Court erred in permitting the United States to question defendant about other acts he may have committed—namely, tax evasion, in violation of Fed. R.

Evid. 404(b). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Prior to defendant taking the stand, Special Agent Michael Fatula, an agent with the Internal Revenue Service, testified that he examined defendant's financial records as part of the investigation. He explained that, during the course of drug investigations, law enforcement often look at tax returns and bank records to determine a person's legitimate sources of income. When a person's financial income exceeds their stated income on their tax returns, it can be an indication to investigators that the unexplained income may be illegitimate criminal proceeds. (Doc. No. 102 at 1780, 1782-84.) Agent Fatula testified that, despite not filing a tax return for 2014, defendant nevertheless deposited significant income into his bank accounts, totaling $81,000. (*Id*. at 1793-96, 1804.) He further testified that defendant received a $60,000 payment from his business but did not claim that income on his personal tax return because he did not file a return for 2015. (*Id*. at 1803.)

On direct examination, Fitzgerald testified to the profitability of his various businesses. On cross-examination, the United States' attorney questioned defendant about one particular business—Helen's Gametime Bar. Fitzgerald explained that, unbeknownst to his business partner, he was collecting cover charges from bar patrons and keeping the money for himself. (Doc. No. 103 at 2153-54.) In response, counsel asked defendant if he reported this income, and defense counsel objected, citing Rule 404(b). The Court overruled the objection on the ground

10

that the information was not sought to establish that defendant was a tax evader but to show that the supposed secret legitimate income did not actually exist. (*Id*. at 2161.) The Court also offered to give a limiting instruction, but defense counsel declined to have one read to the jury. Instead, defense counsel agreed to have the United States' attorney rephrase the question to ask specifically whether the supposed income was documented anywhere. (*Id*. at 2162.) Thereafter, government counsel rephrased the question accordingly, asking Fitzgerald, "Fair to say that whatever money you may have taken from Helen's in the way you described is not documented anywhere, right." Defense counsel did not object to the rephrased question, and Fitzgerald responded, "No it's not." (*Id*. at 2163.)

There was no error, substantial or otherwise. The initial question regarding whether defendant reported the alleged cover charge proceeds was properly admitted to refute defendant's claim that he had legitimate streams of income in excess of what he reported. The Sixth Circuit has held that unexplained wealth may be used in conjunction with an extravagant spending habits to show that the income constituted drug proceeds. *See United States v. Humphrey*, 287 F.3d 422, 431-32 (6th Cir. 2002). Defendant admitted that he lived an extravagant lifestyle. (Doc. No. 103 at 2164 ["I sure do."].)

Moreover, defendant waived this argument when his counsel agreed to the compromised line of questioning and made a strategic decision to forego a limiting instruction. The introduction, and even admission, of inadmissible evidence does not always constitute reversible error because the trial court may be able to "cure" the defect through instructions and admonitions to the jury. *Bruton v. United States*, 391 U.S. 123, 135, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Rather, the introduction of inadmissible evidence only requires a new trial if an

instruction or admonition cannot cure the error. *See generally United States v. Frederick*, 406 F.3d 754, 762 (6th Cir. 2005). Here, the Court offered to give a limiting instruction to ensure that that the jury did not consider the evidence for the improper purpose of showing that defendant was a tax evader, but defense counsel refused the instruction. Because the instruction could have "cured" any problem associated with the jury's consideration of this evidence, Fitzgerald cannot argue now that its admission constituted substantial legal error.[6]

### IV. CONCLUSION

The Court finds that defendant's alleged errors, considered separately or cumulatively, did not result in any substantial legal error, and therefore the interest of justice does not necessitate a new trial. Accordingly, defendant's Rule 33 motion is denied.

**IT IS SO ORDERED**.

Dated: June 16, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] Of course, any possible error was harmless because Special Agent Fatula had already testified that defendant did not file tax returns for years in which he had reportable income.